IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL PAUL FOUST,                          )
                                             )
                    Petitioner,              )
                                             )
          v.                                 )          Civil Action No. 04-176 E
                                             )          JUDGE McLAUGHLIN
SUPERINTENDENT BROOKS, et al.,               ) CHIEF MAGISTRATE JUDGE BAXTER
                                             )
                    Respondents.             )


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**


I.   **RECOMMENDATION**

          It is recommended that the Petition for Writ of Habeas Corpus be dismissed and that a certificate of appealability be denied.


II.  **REPORT**

          This is a petition for writ of habeas corpus filed by a state prisoner presently incarcerated at the State Correctional Institution at Albion, Pennsylvania.  Michael Paul Foust is serving two consecutive life sentences for the murder of an unarmed husband and wife in 1993.  Petitioner asserts that his state court conviction is constitutionally infirm and seeks release.  The Commonwealth has responded to the petition (Docket #6) and it is now ripe for disposition.


          1.   **Procedural history.**

          Petitioner was convicted after a jury trial of two counts of First Degree Murder on June 24, 1994, when he was seventeen years of age.  Sentence was imposed on June 30, 1994, and a direct appeal was filed in the Superior Court of Pennsylvania in which petitioner presented the following claims:

                    A.   Did the trial court err in denying appellant's motion to transfer these
                         proceedings to the Juvenile Division of Common Pleas Court?

B.    Did the trial court err in permitting the introduction into evidence of photographs of the homicide victims and the crime scene?

C.    Was appellant denied a fair trial by the disallowance of character and background evidence?

(State Court Record, Superior Court Brief at 4).  The Superior Court affirmed the judgment of sentence on July 18, 1995.  Petitioner's subsequent petition for allowance of appeal was denied by the Supreme Court of Pennsylvania on December 15, 1995.

Petitioner next filed a petition pursuant to the Post Conviction Relief Act (PCRA) on July 26, 1996 in which he asserted:

1.    Trial counsel was ineffective in failing to file a suppression motion;

2.    Trial counsel was ineffective in allowing the Commonwealth to hold back exculpatory evidence;

3.    Counsel was ineffective in failing to prepare a defense of diminished capacity or sudden passion;

4.    Counsel was ineffective in requesting an erroneous charge on intent.

(State Court Record, PCRA petition at 3).  Counsel was appointed to represent petitioner, and a hearing was held before the trial court on September 2, 1999, at which trial counsel Antkowiak and petitioner each testified.  At the hearing, additional issues were presented and then ruled upon by the PCRA court, which issued an order denying the petition and making findings of fact that same date (State Court Record, Findings of Fact, September 7, 1999).

Petitioner appealed the denial of PCRA relief, and filed a pro se statement of matters complained of which contained numerous claims.  New counsel was appointed and filed a Motion to Withdraw along with an Anders brief and a "no-merit" letter, identifying the following issues raised by petitioner:

1.    Trial court erred when permitting introduction of photographs into evidence of homicide victims and crime scene after extensive testimony by pathologist/coroner and detectives;

2.    Petitioner was denied fair trial by the disallowance of character and background evidence;

3.    Trial court imposed illegal sentence;

4.    Petitioner was denied a fair trial for lack of time allowed for trial.  Trial was made to be done in three days;

2

5. The trial court erred by not sequestering jury due to media and radio coverage;

6. Post Conviction Relief Act counsel was ineffective for not questioning the disappearance of petitioner's first submitted PCRA and for not preparing any defense with/for petitioner;

7. Trial counsel was ineffective for the following [reasons]:

   A) Failing to file motion to suppress;

   B) Failing to seek exculpatory evidence from Commonwealth;

   C) Failing to object to trial court instructing jury on the total first degree murder instruction rather than the instruction/definition of premeditation as requested by jury;

   D) Failing to request change of venue due to media coverage;

   E) Failing to offer evidence of drug use into defense in order to establish diminished capacity.  Counsel felt he didn't need it;

   F) Failing to have petitioner be evaluated by psychiatrist before trial instead of after;

   G) Failing to raise demeanor of juror's hesitating to give his answer when asked if he agreed with verdict.

(State Court Record, Brief and "no-merit" letter of September 3, 2002).  The Superior Court accepted counsel's submission and affirmed the lower court's order on April 17, 2003, finding that issues 1 and 2 had been previously litigated on direct appeal, that issue 5 had been waived, and that the remaining claims lacked merit (State Court Record, Superior Court Opinion, April 17, 2003).  The Pennsylvania Supreme Court denied Foust's petition for allowance of appeal on November 19, 2003.

Foust filed the instant petition for writ of habeas corpus on June 23, 2004 and raises the same claims he presented to the Superior Court on appeal from the denial of PCRA relief (Claims 1-7(G) above).  The Commonwealth has responded to the petition (Docket #3) and it is now ripe for disposition.

2. **Evidence at trial.**

The evidence at trial was largely uncontested by defendant and, as summarized by the Superior Court of Pennsylvania, showed the following:

In the early morning hours of November 22, 1993, appellant, Michael Foust, and one Kevin Zenker (a.k.a. Krazy) borrowed a friend's car and drove from Oil

3

City, Pennsylvania, to the residence of one Donald Foust, appellant's father.
While at the Foust residence, appellant stole his father's loaded 9mm handgun
and several extra bullets.  Thereafter, with appellant at the wheel and the gun
tucked between the seat, the pair returned to Oil City.

On the return trip, appellant passed the residence of the victims, Darla Bump and
Russell Rice.  On the initial pass, Zenker fired the 9mm pistol out the passenger
window at Bump's dog.  Curious whether Zenker had hit the animal, appellant
turned the car around and passed the house again.

At this time, Bumps daughter informed Rice and Bump that the car belonged to
Rice's nephew, Kevin Seigworth.  Rice and Bump pulled out of the driveway
and followed who they thought was Rice's nephew.

After evading the victims for approximately four (4) miles, appellant grabbed the
gun he had stolen from his father, slowed the car to a stop, and jumped out.  The
victim's car stopped.  As Rice was emerging from his car unarmed, appellant
approached the victim's vehicle and opened fire.  After fatally shooting Rice four
(4) times, appellant unloaded the rest of his clip into Bump as she remained seat
belted into the passenger seat.

(State Court Record, Superior Court Opinion, April 17, 2003 at 1-2).  At trial, petitioner confirmed the

following portions of the Commonwealth's case: (1) borrowing Seigworth's car (TT2 174)[1]; (2) taking

his father's gun (TT2 178); (3) watching as Zenker shot out the window of the car at what he believed

to be a deer (TT2 182-183); and (4) being chased by a car for some distance (TT2 183-184).  Petitioner

claimed that the car behind him rear-ended his car (TT2 187), and that he stopped, got out with the gun,

and approached the car behind him.  The driver of the other car was standing by the open driver's side

door, and petitioner thought he was reaching back into the car for something which is when "fear took

me and the next thing I knew, the shooting was already done." (TT2 193).


   3.     **PCRA Hearing.**

          The first witness at the PCRA hearing was trial counsel Antkowiak.  He was asked why

he chose not to file a motion to suppress and testified that his client had not made any statements to

---

[1]      Numerals in parentheses preceded by the letters "TT2" refer to pages in the Trial Transcript,

       Second Day, submitted as part of the State Court Record in this matter.

police, and that no evidence had been seized from petitioner (HT 6)[2].  Thus, in his view, there was no reason for a motion to suppress.

Counsel was unaware of any facts concerning a voluntary intoxication defense until after trial when petitioner first suggested he may have "ingested" a substance (HT 6-7).  However, petitioner's ability to recall in detail everything he did on the night in question convinced Antkowiak that he had no viable intoxication defense (HT 8).

Trial counsel testified that he did not see a basis for seeking a change of venue prior to trial.  The trial court permitted extensive voir dire, and counsel was able to seat a jury in two days, after having explored possible prejudice from pretrial publicity (HT 9-10).  Finally, counsel represented petitioner in prior juvenile proceedings, and was familiar with petitioner's record of two brief hospitalizations for depression (HT 11).  He found nothing in those records which would have indicated the possibility of a diminished capacity defense (id.).

Petitioner also testified, claiming for the first time that he and Zenker had smoked marijuana prior to the killings (HT 30-31).  He claims to have told counsel about this prior to trial, but that counsel said "we don't want to bring that up." (HT 36).

### 4.    Exhaustion and procedural default.

The first issue in any habeas corpus proceeding instituted by a state prisoner is whether the petitioner has exhausted his state court remedies.  Exhaustion requires that the claims presented in the federal court have been presented in substantially the same form to the state's highest court, with identity of both facts and legal theory.  Bond v. Fulcomer, 864 F.2d 306 (3d Cir. 1989).  Even if the claims have been so presented to the state's highest court, "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. §2254(c); Castille v. Peoples, 489 U.S. 346 (1989).  And, although the requirement is not jurisdictional, it "should be strictly

---

[2]    Numerals in parentheses preceded by the letters "HT" refer to pages in the Hearing Transcript dated September 2, 1999.

adhered to because it expresses respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." Landano v. Rafferty, 897 F.2d 661, 669 (1990). The requirement also recognizes the duty, and ability, of the state courts to uphold federal law, and serves the interest of ensuring a fully developed record in the state court. Id. "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Finally, a federal habeas court is required to dismiss a petition which contains both exhausted and unexhausted claims. Rose v. Lundy, 455 U.S. 509, 510 (1982); Landano v. Rafferty, supra.

All of petitioner's claims have been presented to the state courts in the context of his direct appeal or his PCRA petition. Therefore, petitioner has exhausted available state court remedies.

Further, with the exception of petitioner's claim that the trial court erred in failing to sequester the jury, all of the claims presently raised by Petitioner were addressed on the merits by the state courts. Thus, procedural default is an issue only with respect to petitioner's sequestration claim. Neither exhaustion nor procedural default bar consideration of any of petitioner's claims save for his fifth issue.

Petitioner did not present his claim that the trial court erred in failing to sequester the jury on direct appeal. The Superior Court, when reviewing the denial of PCRA relief, found that this issue had been waived. This is a state court procedural default which bars consideration of the claim.

Like the exhaustion requirement, the procedural default doctrine is based upon notions of comity and federalism. The procedural default barrier rests upon the "independent and adequate state grounds" doctrine, which dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment. Coleman v. Thompson, 501 U.S. 722, 750 (1991). A state's procedural rules are entitled to deference by federal courts, and violation of a state procedural rule may constitute an independent and adequate state ground for denial of federal review of habeas claims. Id., 501 U.S. at 750. Violations of a state's procedural rules may constitute an independent and adequate state ground sufficient to invoke the procedural default doctrine even where

no state court has concluded that a petitioner is procedurally barred from raising his claims. Glass v. Vaughn, 65 F.3d 13, 15 (3d Cir. 1995), cert. denied, 116 S.Ct. 1027 (1996).

Federal habeas review is not available to a petitioner whose constitutional claims have not been addressed on the merits due to procedural default unless such petitioner can demonstrate: 1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Coleman v. Thompson, 501 U.S. at 750. In this respect, a showing of "actual prejudice" requires a showing "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

In this case, petitioner does not point to any cause external to his defense which prevented him from raising his sequestration claim on direct appeal. Thus, he fails to meet the cause standard, and the court need not address actual prejudice. Murray v. Carrier, 477 U.S. 527, 533 (1986). Further, and in any event, petitioner could not establish prejudice because, as the trial court held:

> We also note that after the jury was selected they were repeatedly and thoroughly instructed by the Court to avoid any outside influence. We had no evidence throughout the course of the trial or even after the trial that the jury was influenced in its decision by anything other than the evidence that was developed in open court.

(Trial Court Opinion dated September 7, 1999 at 4). Petitioner has absolutely failed to show that the court's decision not to sequester the jury caused him any prejudice at all. Petitioner cannot establish cause for and prejudice from his failure to properly raise his claim concerning sequestration of the jury in the state courts and he is not entitled to habeas review of that claim.[3]

---

[3]    The failure to establish constitutional prejudice also disposes of the "manifest injustice" exception to procedural default which would require a showing of actual innocence. Schlup v. Delo, 513 U.S. 298 (1995)(the "fundamental miscarriage" exception is limited to the "extraordinary case, where a constitutional violation has probably resulted in the conviction of

5.    **Merits.**

A.    **Applicable law.**

Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations.  28 U.S.C. § 2254.  Specifically, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence.  28 U.S.C. § 2254(e).  Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000).  In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. Id. (citing Marshall v. Lonberger, 459 U.S. 422, 433 (1982)).

A federal court may not issue the writ unless it concludes that the state court's adjudication resulted in a decision that was "contrary to," or an "unreasonable application of," clearly established federal law as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d)(1).  In  Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court discussed the independent meanings of the "contrary to" and "unreasonable application" clauses contained within § 2254(d)(1):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.    Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 411-413.  The Supreme Court further clarified that a federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly

_____

one who is actually innocent" (quoting Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986)).  Put simply, the court's failure to sequester the jury has no bearing on petitioner's actual innocence of the crimes charged.

established federal law was objectively unreasonable. Id. at 409.  "Under §2254(d)(1)'s unreasonable application clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.

> **B.      Petitioner's claims.**
>
> **1.      Trial court erred when permitting introduction of photographs into evidence of homicide victims and crime scene after extensive testimony by pathologist/coroner and detectives.**

The Commonwealth sought admission at trial of numerous photographs of the victims at the crime scene, as well as two autopsy photographs.  Objections were made to the graphic nature of some of the photographs, and on the basis that they were cumulative of the oral testimony given by the coroner and/or the officers at the scene.  Petitioner presently asserts only that the photographs were cumulative of other evidence.  He does not reiterate the argument made in state court that the photographs were unduly graphic and, therefore, inflammatory.   The court will address the inflammatory nature of the photographs, however, since this was the main thrust of his argument in the state courts and the failure to present that claim in the instant petition may be inadvertent.

At issue are seven photographs admitted into evidence at trial.  The first two are photographs which depict victim Rice at his autopsy.  The photographs were initially offered with the coroner's testimony and in color, but were reproduced in black and white (TT2 51-57).  The court ruled that the first photograph, showing Rice's back and buttocks, was not inflammatory (TT2 57).  The second photograph showed Rice from the side where the four entry wounds are visible.  The court found this photograph inflammatory, but ruled that the change from color to black and white, and the Commonwealth's need to explain the four wounds and to help the jury visualize how they occurred, convinced him that the photograph's probative value outweighed any improper prejudice (TT2 57).  The Commonwealth also offered to cover the victim's face on the second photograph which defense counsel said would be helpful (TT2 57).

The second set of 5 photographs were of the crime scene, and depicted the victims' vehicle and the position of each body when found by police.  These photographs were offered during the testimony of an investigating officer and, after a lengthy sidebar (TT2 81-89), 4 of the 5 were admitted.  The court ruled that Exhibits 22 and 24 were not inflammatory as they did not show blood (Exhibit 24 is described as being a "distant shot" of the outside of the car) (TT2 83).  The court found that Exhibit 25, which depicts the female victim still in her car seat, was "probably not inflammatory" but that the probative value of showing the victim's position and the fact that she was still in her seatbelt outweighed any prejudice even if the photograph had some inflammatory aspect (TT2 84).  Exhibit 27 showed a view of the windshield of the car looking in towards the victims, which would enable the prosecution to show the angle at which the bullets were fired (TT2 85-86).  The court again found any inflammatory aspect of the picture outweighed by its probative value (TT2 86).

The Commonwealth then offered Exhibits 29 and 30, each showing the victims as viewed through the driver's side door, and showing the male victim with one foot in the car and one out of the car.  These pictures are also described as showing that there was nothing on the floor or between the seats for the victim to grab (TT2 86-87).  The Commonwealth voluntarily withdrew Exhibit 30 as being virtually the same view as Exhibit 29, and the court admitted Exhibit 29 on the basis that the probative value outweighed any improper prejudice (TT2 88).

The issue of the inflammatory nature of the photographic evidence was also addressed at length on direct appeal by the Superior Court.  Petitioner framed the issue as one of state evidentiary law, and argued that the trial court committed error in admitting the photographs due to their graphic nature (State Court Record, Superior Court Brief at 13-20).  The Superior Court, accordingly, addressed the issue as a matter of state evidentiary law and found that the trial court had not abused its discretion in admitting the photographs (Id., Superior Court Opinion July 18, 1995, pages 9-14).

The issue of whether the photographs were properly admitted into evidence at trial is not cognizable in a federal habeas proceeding because it implicates a violation of state evidentiary rules only and not federal law.  "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by

simply labeling the claim 'federal.'" <u>Baldwin v. Reese</u>, 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). When petitioner presented his claim on direct appeal, he did not claim that the state's evidentiary rulings violated his constitutional due process and equal protection rights, as he must in order to assert a constitutional claim. Instead, he presented the claims solely as a matter of state evidentiary law. Petitioner cited to no federal law and the analysis applied by the state courts in deciding his claim was based upon state evidentiary case law. The issue is not a proper subject for federal habeas review. <u>See</u> <u>Johnson v. Rosemeyer</u>, 117 F.3d 104, 109 (3d Cir. 1997); <u>Geschwendt v. Ryan</u>, 967 F.2d 877, 888-89 (3d Cir.1992).

      Even if the issue had properly been framed as a constitutional one, however, and even if petitioner intends to challenge the graphic nature of the photographs as he did in state court, the trial court's rulings clearly do not violate petitioner's rights. There are times when the graphic nature of evidence is such that admission thereof can deny a criminal defendant a fair trial. <u>See</u>, <u>Lesko v. Owens</u>, 881 F.2d 44, 51-52 (3d Cir.1989) (where probative value of evidence, though relevant, is greatly outweighed by the prejudice to the accused from its admission, then use of such evidence may violate fundamental fairness and due process). Here, the photographs at issue were relevant to the Commonwealth's theory of the case, and the trial court went to great lengths to determine the probative value thereof and the extent of any prejudice which might result from their admission. Any potential for the juror's passions to be inflamed was ameliorated when the two autopsy photographs were reduced to black and white, and the face of the victim was covered in one photograph. Further, the Commonwealth withdrew one photograph from the crime scene, meaning that only four views of the crime scene are at issue. These four photographs, as described above, showed the position of the victims in the car when found, illustrated the angle of entry of the bullets through the windshield of the car, and also showed the relevant entry wounds on the victims' bodies. Photograph 29 was also relevant to the Commonwealth's attempt to rebut Foust's defense that he thought the victim was reaching for something between the seats of the car as it showed the victim with one foot in the car, one foot out of the door, and nothing between the front seats.

      The analysis provided by the trial court, i.e., weighing the inflammatory nature of the photographs against the probative value, is entirely consistent with the analysis necessary to determine

if a constitutional violation occurred.  The trial court's findings of fact concerning the graphic nature, or not, of the photographs, and of the likely impact they would have on a jury, are clear on the record and are entitled to a presumption of correctness, which petitioner has not rebutted.  The trial court's determination that the photographs possessed probative value which outweighed any possible inflammatory effect on the jury is one which is neither contrary to nor an unreasonable application of federal law to the facts of this case.

> **2.    Petitioner was denied fair trial by the disallowance of character and background evidence.**

Petitioner sought to admit at trial the testimony of five witnesses to testify to his reputation for non-violence, and also sought to admit evidence of the witnesses' actual personal knowledge of Foust's character in this respect.  The trial court ruled, consistent with state law, that a witness may testify only to the defendant's general reputation and may not offer a personal opinion regarding a defendant's character.  The Superior Court affirmed on the same basis (State Court Record, Superior Court Opinion, July 18, 1995 at 14-15).  Again, the matter was pursued entirely as an issue of state evidentiary law and, accordingly, is not properly before this court. Johnson, supra; Geschwendt, supra.

Further, and in any event, a review of the record reveals that each witness, despite the ruling, testified that they had personally never seen petitioner behave violently (TT2 276, 278, 280, 282, 283)(e.g., "When he lived with us he was never violent.").  In fact, each witness clearly testified to their personal experience, as opposed to their knowledge of the community's perception, of whether petitioner was or was not violent.  Thus, the state court record reflects that the defense managed to place into evidence the very testimony that the state court ruled was inappropriate.  Petitioner could not have suffered prejudice from the trial court's ruling, and certainly was not denied a fair trial on this basis.

> **3.    Trial court imposed illegal sentence.**

Petitioner's sentencing claim is a challenge to the trial court's decision to impose consecutive sentences.  There is no allegation that the court imposed a sentence beyond its authority,

or that there is any constitutional infirmity in the state sentencing laws.  This alleged error of state law lacks constitutional dimension and does not warrant federal habeas relief. See, e.g., Souch v. Schaivo, 289 F.3d 616 (9th Cir. 2002)(holding that neither an alleged abuse of discretion by the trial court in choosing consecutive sentences, nor the trial court's alleged failure to list its reasons for imposing consecutive sentences, being errors under state law, could form the basis for federal habeas relief); Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir.1994)(concluding, where Nevada prisoner challenged state trial court imposition of consecutive sentences without explanation, "[t]he decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus"); Herrera v. Artuz, 171 F.Supp.2d 146 (S.D.N.Y. 2001) (holding that state court's decision to impose consecutive sentences did not warrant federal habeas relief, even where prosecution had recommended concurrent sentences, where sentence was within the range prescribed by state statute and the trial court had discretion to impose consecutive terms). Consequently, petitioner has failed to show that he is entitled to habeas corpus relief with respect to his sentencing claim.

### 4.    Petitioner was denied a fair trial for lack of time allowed for trial.

Petitioner did not identify for the state court, and does not indicate here, what more he would have done at trial with more time, nor does he indicate how his defense was limited in any respect by the trial court's scheduling.  In fact, trial counsel conceded at the PCRA hearing that he had ample time to present his witnesses (HT 17).  The Superior Court found this claim "not supported by the record" and noted that petitioner failed to identify "any evidence that the trial court precluded [on the basis of time]" or to otherwise support his claim (State Court Record, Superior Court Opinion  of April 17, 2003 at 6).

"Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. We have long interpreted this standard of fairness to require that criminal defendants be afforded a *meaningful* opportunity to present a complete defense." California v. Trombetta, 467 U.S. 479, 485 (1984) (emphasis added).  Petitioner

must establish that he was somehow denied the opportunity to present a meaningful defense to the charges through the allegedly inadequate amount of time permitted by the trial court.  In this respect, petitioner must show:

> First, that [defendant] was deprived of the opportunity to present evidence in his favor; second, that the excluded testimony would have been material and favorable to his defense; and third, that the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose.

Government of Virgin Islands v. Mills, 956 F.2d 443, 446 (3d Cir.1992).  Petitioner has met none of these three requirements and the state court's denial of his claim was proper.

### 5.      The trial court erred by not sequestering jury due to media and radio coverage.

This claim is barred by procedural default as discussed above.

### 6.      Post Conviction Relief Act counsel was ineffective for not questioning the disappearance of petitioner's first submitted PCRA and for not preparing any defense with/for petitioner.

Petitioner's sixth claim is that PCRA counsel was ineffective for not preparing for the PCRA hearing and for not questioning the "disappearance" of petitioner's first PCRA petition.  These claims do not rise to constitutional magnitude and are not cognizable under § 2254.  "There is no constitutional right to an attorney in state post-conviction proceedings." Pennsylvania v. Finley, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); Murray v. Giarratano, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) (applying the rule to capital cases).  Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. See Wainwright v. Torna, 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982)(where there is no constitutional right to counsel there can be no deprivation of effective assistance)." Coleman v. Thompson, 501 U.S. 722, 752 (1991).  It follows that counsel's asserted failure to file an appeal from the denial of relief in such a proceeding would not give rise to a constitutional claim.  See also, Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988)(asserted errors in the course of a state's post conviction process not cognizable in a federal habeas petition); Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir.1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack

on a proceeding collateral to the detention and not the detention itself.") (internal quotation marks omitted); Roe v. Baker, 316 F.3d 557, 571 (6th Cir. 2002) ("relief may not be granted to a habeas petitioner for alleged deficiencies in a state's post-conviction procedure"); Jolly v. Gammon, 28 F.3d 51, 54 (8th Cir. 1994); Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir. 1989); Hopkinson v. Shillinger, 866 F.2d 1185, 1219-20 (10th Cir. 1989), on reh'g, 888 F.2d 1286 (1989), overruling on other grounds recognized by Davis v. Maynard, 911 F.2d 415, 417 (10th Cir.1990); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir.1987). Contra Dickerson v. Walsh, 750 F.2d 150, 153 (1st Cir.1984); Lambert v. Blackwell, 2003 WL1718511 (E.D.Pa., April 1, 2003)(persuaded by Eighth Circuit's analysis that such claims impact only the issue of exhaustion of state remedies); Abu-Jamal v. Horn, 2001WL1609690 (E.D.Pa., Dec. 18, 2001)(same). Thus, this claim will not be further addressed.

### 7.    Claims challenging the effectiveness of trial counsel:

Petitioner's remaining claims are framed in terms of ineffective assistance of counsel. The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)).

> Thus the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.  Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

Fretwell, 506 U.S. at 369 (citing United States v. Cronic, 466 U.S. 648, 658 (1984)).  See also Kimmelman v. Morrison, 477 U.S. 365, 374 (1986) (the essence of a claim alleging ineffective assistance is whether counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect).

The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance:  1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense. Strickland, 466 U.S. at 687.  To determine whether counsel performed below the level expected from a reasonably competent attorney, it is necessary to judge counsel's challenged conduct on the facts of the particular case, viewed at the

time of counsel's conduct.  Strickland, 466 U.S. at 690.  A petitioner who claims that he or she was denied effective assistance of counsel carries the burden of proof.  Cronic, 466 U.S. at 658.

The first prong of the Strickland test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Strickland, 466 U.S. at 688.  A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." Id. at 689.  The question is not whether the defense was free from errors of judgement, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place. Id.

The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair or unreliable.  Strickland, 466 U.S. at 689.  To prove prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Strickland, 466 U.S. at 694 (emphasis added). A "reasonable probability" is one that is sufficient to undermine confidence in the outcome. Id.

### A) Failing to file a motion to suppress.

The PCRA court noted that petitioner failed to identify any evidence which could have been the subject of a motion to suppress (Findings of Fact, September 7, 1999 at 1).  Indeed, petitioner still has not identified any evidence presented at trial which might have been the subject of a motion to suppress.  The PCRA court ruled that "there was no basis to file a suppression motion." (Id.).  This finding of fact is presumed correct, and petitioner has not rebutted that presumption.  Therefore, the state court's ruling that this claim of ineffective assistance does not warrant relief is neither contrary to nor an unreasonable application of federal law.  Parrish v. Fulcomer, 150 F.3d 326, 327 (3d Cir.1998)(counsel will not be deemed ineffective for failing to present an argument without merit).

### B) Failing to seek exculpatory evidence from Commonwealth.

16

Again, petitioner fails to identify any evidence which was withheld from the defense and which counsel could have obtained from the Commonwealth. This claim likewise fails. Parrish, supra.

### C)    Failing to object to trial court instructing jury on the total first degree murder instruction rather than the instruction/definition of premeditation as requested by jury.

Petitioner asserts that counsel should have objected when the trial court, asked by the jury to give a supplemental instruction on the meaning of "premeditation", decided to give a more complete charge on the offense of first degree murder, including the definition of premeditation. The PCRA court found "no error" in its decision to instruct the jury more fully (State Court Record, Finding of Fact, September 7, 1999 at 5). The Superior Court reviewed the court's supplemental instruction at length, and found that it was an accurate statement of Pennsylvania law in every respect (Id., Superior Court Opinion, April 17, 2003 at 9). Hence, it concluded that counsel was not ineffective for failing to object because "there was no basis upon which trial counsel could have successfully objected to this instruction." (Id. at 10). Petitioner does not argue that the instruction given was inaccurate. Instead, he merely alleges that he would have preferred the court simply read the definition of premeditation without the context of the offense as a whole. Petitioner could not have been prejudiced by an instruction which accurately states Pennsylvania law. The state courts properly rejected this claim of ineffective assistance. Parrish, supra.

### D)    Failing to request change of venue due to media coverage.

The issue of pretrial publicity and the effect it has upon a defendant's ability to obtain a fair trial has been settled since Murphy v. Florida, 421 U.S. 794 (1974), Estes v. Texas, 381 U.S. 532 (1965) and Irvin v. Dodd, 366 U.S. 717 (1961):

> . . . [W]hen prejudicial pretrial publicity wholly undermines the impartiality of the jury, the trial court should take steps to assure a fair trial, usually by granting a change of venue. Sheppard [v. Maxwell], 384 U.S. [333] at 363, 86 S.Ct. 1507 [(1966)]; Rideau [v. Louisiana], 373 U.S. 723, 83 S.Ct. 1417 [(1963)].
>
> In some cases, adverse pretrial publicity is so extreme that the court will presume prejudice to the defendant. Irvin, 366 U.S. at 723, 81 S.Ct. 1639; Patton [v. Yount], 467 U.S. [1025] at 1031, 104 S.Ct. 2885 [(1984)]. "Where media

or other community reaction to a crime or a defendant engenders an atmosphere so hostile and pervasive as to preclude a rational trial process, a court reviewing for constitutional error will presume prejudice to the defendant without reference to an examination of the attitudes of those who served as the defendant's jurors." Rock v. Zimmerman, 959 F.2d 1237, 1252 (3d Cir.1992), overruled on other grounds Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *see also* Sheppard, 384 U.S. at 333, 86 S.Ct. 1507; Rideau, 373 U.S. at 723, 83 S.Ct. 1417. Such cases, however, are "exceedingly rare." Rock, 959 F.2d at 1253; Flamer v. Delaware, 68 F.3d 736, 754 (3d Cir.1995). In fact, for a court to presume prejudice, "the community and media reaction ... must have been so hostile and so pervasive as to make it apparent that even the most careful voir dire process would be unable to assure an impartial jury." Rock, 959 F.2d at 1252.

> **In the absence of facts that demonstrate a presumption of prejudice, a defendant must prove actual prejudice, that is, that those who served on his jury could not reach an impartial verdict based solely on the evidence presented at trial**. Patton, 467 U.S. at 1035, 104 S.Ct. 2885 (citing Irvin, 366 U.S. at 723, 81 S.Ct. 1639); Rock, 959 F.2d at 1253. . . . **To determine whether actual prejudice exists, the court should look to the totality of the circumstances, including the voir dire of the jury**. Murphy, 421 U.S. at 799-801, 95 S.Ct. 2031.

Pursell v. Horn, 187 F.Supp.2d 260, 301 (W.D.Pa. 2002)(emphasis added). The PCRA court made the following ruling:

> In addressing the pretrial publicity issue, that issue is resolved by the fact that We did get fourteen jurors selected. I have gone over my notes of jury selection and find that counsel actually interviewed only thirty-six jurors to get the fourteen, and, therefore, we are satisfied that there was no problem getting a fair jury in this case. The issue of pretrial publicity is subsumed in the fact that We had no problem finding a jury.

(State Court Record, Findings of Fact, September 7, 1999 at 3). In ruling on the specific issue of counsel's failure to request for change of venue, the court further noted that it did not recall any "sensational" reporting on the case (id. at 4). On appeal, the Superior Court affirmed, finding that petitioner failed to meet his burden of establishing prejudice. "Indeed, trial counsel testified at the evidentiary hearing that the trial court allowed him to conduct an individual voir dire with prospective jurors in order to determine whether the pretrial publicity would affect their consideration of the case." (Id., Superior Court Opinion, April 17, 2003 at 11; HT 9-10).

The state court's ruling that no prejudice accrued due to the pretrial publicity in this case disposes of the issue of counsel's failure to seek a change of venue. Absent any prejudice from the underlying pretrial publicity, petitioner could not have suffered the prejudice necessary to establish a

18

claim of ineffective assistance.  Hence, this ruling is neither contrary to nor an unreasonable application of federal law.

### E)   Failing to offer evidence of drug use into defense in order to establish diminished capacity.

Petitioner next asserts the counsel should have pursued a diminished capacity defense in this case.  Trial counsel testified that he had no reason to believe that petitioner was under the influence of alcohol or drugs at the time of the offense, and that petitioner first suggested to counsel that he may have used marijuana prior to the killings after trial was concluded (HT 7).  Counsel further testified that, even if he had been made aware of this evidence prior to trial, he would not have changed his defense since there was no indication that the level of impairment "would have risen to a level that would have changed anything or mitigated anything." (HT 7).  Petitioner's clear memory of details about the entire incident gave counsel "no indication that . . . his faculties . . . were in any way diminished by anything." (HT 8).  The PCRA court expressly found that counsel was credible in his testimony, and rejected Foust's contrary testimony (Findings of Fact September 7, 1999 at 3).  Thus, the court ruled that counsel had no reason to pursue a diminished capacity defense.

Federal law recognizes that trial counsel need not present every possible defense in every case.  Indeed, one of counsel's greatest responsibilities at trial is to choose from among possible defenses the defense or defenses most likely to benefit his client. See, e.g., Florida v. Nixon, 543 U.S. 175, 125 S.Ct. 551, 563, 160 L.Ed.2d 565 (2004) (it is reasonable for defense counsel enter guilty plea in capital case to concentrate on penalty phase, thereby avoiding counterproductive course which might result from presenting inconsistent defenses); Jacobs v. Horn, 395 F.3d 92, 107-08 (3rd Cir.2005) (counsel's failure to assert a diminished capacity defense was not unreasonable where such a defense would have undermined counsel's strategy to seek acquittal based upon Petitioner's innocence); Porter v. Horn, 276 F.Supp.2d 278, 315-16 (E.D.Pa.2003) (same).  Further, "[t]he right to counsel does not require that a criminal defense attorney leave no stone unturned and no witness unpursued." Berryman v. Morton 100 F.3d 1089, 1101 (3d Cir. 1996).  Notwithstanding, defense counsel does have a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations

unnecessary.  <u>Strickland</u>, 466 U.S. at 691.  "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  <u>Id</u>.

Here, it was certainly reasonable for counsel to decide not to pursue a diminished capacity defense when he had no information prior to trial which would lead him to believe that there was any basis for presenting such a claim to the jury, and where his client's behavior and ability to recall in detail all of the events of the evening constituted strong evidence that his client was not suffering from a diminished capacity. Under Pennsylvania law, a diminished capacity defense requires proof that the defendant was "overwhelmed to the point of losing his sensibilities" <u>Commonwealth v. Breakiron</u>, 524 Pa. 282, 571 A.2d 1035, 1041 (1990).  Thus, even if counsel had been informed in a timely fashion that his client may have used marijuana, it would not have been unreasonable for counsel to conclude that his client's activities during the offense, coupled with his clear memory of those activities, would make such a defense untenable.  Hence, the state court's ruling that counsel acted reasonably withstands habeas review as it is neither contrary to nor an unreasonable application of federal law.

### F)   Failing to have petitioner be evaluated by psychiatrist before trial instead of after.

Lastly, petitioner argues that he had a prior history of hospitalizations for depression and that this should have prompted counsel to have him examined by a psychiatrist prior to trial in order to establish a diminished capacity defense on this basis.  In this respect, counsel testified that he was familiar with petitioner's records of hospitalizations for depression because he had represented petitioner on a previous matter.  In counsel's view, nothing from petitioner's medical records, or from his behavior on the night of the killings, led him to believe that a psychiatric defense was available (HT 10-11).  The Superior Court, having noted counsel's testimony, also found that petitioner "has presented no evidence to suggest that counsel was mistaken in his evaluation of subsequent trial strategy." (Superior Court Opinion of April 17, 2003 at 12).  Again, counsel is not required to pursue each and every possible defense, and it is petitioner's burden to establish that counsel's actions were unreasonable.  The mere fact of a prior hospitalization for depression is not sufficient to establish that petitioner lacked the ability

to form the requisite intent to commit murder on the night in question.  Again, counsel was aware of the available evidence, and decided that it would be fruitless to pursue a diminished capacity defense. Petitioner has failed to present evidence which would suggest that this decision was unreasonable and, accordingly, the state court's ruling is neither contrary to nor an unreasonable application of the Strickland test for ineffective assistance.

### 4.        Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253(as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  Amended Section 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."   Where the federal district court has rejected a constitutional claim on its merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong..." Szuchon v. Lehman, 273 F.3d 299, 312 (3d Cir. 2001) quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000).  A petitioner meets this standard if he can show that the issue "is debatable among jurists, or that a court could resolve the issue differently, or that the question deserves further proceedings."  McCracken v. Gibson, 268 F.3d 970, 984 (10th Cir. 2001).  Under 28 U.S.C. § 2253(c)(3), the district court must identify which specific issues satisfy the standard. Because Petitioner has not made such a showing, a certificate of appealability should be denied.

### CONCLUSION

Wherefore, on the basis of the foregoing, it is respectfully recommended that the instant petition for writ of habeas corpus be dismissed and that a certificate of appealability be denied.

In accordance with the Magistrates Act, 28 U.S.C.  § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation.  Any party opposing the

objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure

to file timely objections may constitute a waiver of any appellate rights.


/s/Susan Paradise Baxter
SUSAN PARADISE BAXTER
UNITED STATES MAGISTRATE JUDGE

Dated:  July 5, 2006